# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DEBBIE L. GUNSTEEN, | ) | |
| | ) | |
| Debtor, | ) | |
| | ) | |
| _____ | ) | No. 13 C 2329 |
| | ) | |
| HARRIS N.A., as successor by merger | ) | Judge John Z. Lee |
| to HARRIS TRUST AND SAVINGS | ) | |
| BANK, | ) | |
| | ) | Appeal from |
| Plaintiff, | ) | Bankruptcy No. 11 B 10055, |
| | ) | Adversary No. 11 A 01359 |
| v. | ) | |
| | ) | |
| DEBBIE GUNSTEEN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

In this adversary proceeding, the bankruptcy court found after a trial that Harris N.A. had failed to establish that a debt owed by Debbie Gunsteen was nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B). Harris N.A. ("the Bank") now appeals the bankruptcy court's February 8, 2013, entry of final judgment in Gunsteen's favor. For the following reasons, the Court affirms the bankruptcy court's judgment.

### Procedural Background

On March 10, 2011, Gunsteen filed a bankruptcy petition in the bankruptcy court for the Northern District of Illinois. Bankruptcy Case No. 11 B 10055. In that proceeding, the Bank filed an adversary complaint against Gunsteen in which the Bank sought a determination that more than $1 million of Gunsteen's debt to the Bank was non-dischargeable pursuant to 11 U. S. C. §

523(a)(2)(B). The Bank asserted that Gunsteen had submitted a false written statement regarding her financial condition to the Bank in a 2009 Financial Statement to obtain renewal of a loan. Adversary Case No. 11 A 01359.

On September 10, 11, and 12, 2012, the bankruptcy court presided over a trial in the adversary proceeding. After the trial concluded, the parties submitted post-trial briefing, including proposed findings of fact and conclusions of law. In its brief, the Bank sought leave to amend its pleading pursuant to Federal Rule of Civil Procedure 15(b)(2) to add a § 523(a)(2)(B) nondischargeability claim based upon an earlier 2008 Financial Statement that Gunsteen had submitted to the Bank in order to obtain the loan. On February 11, 2013, the bankruptcy court issued its Post-Trial Findings of Fact and Conclusions of Law and entered a Final Judgment and Order. The bankruptcy court rejected the Bank's request to amend its pleadings, found in favor of Gunsteen, and held that Gunsteen's debt to the Bank was dischargeable. The Bank then brought this appeal.

## Facts[1]

### The Parties

The Bank is an Illinois national banking association with its principal place of business in Chicago, Illinois. Stip. ¶ 1. Gunsteen is an individual residing in Bartlett, Illinois and is the Debtor in a related bankruptcy case. *Id.* ¶ 2. For over eighteen years, Gunsteen was the secretary, vice-president, and a co-owner of Magun Electric. *Id.* ¶ 3.

### The Debt

On October 16, 2008, the Bank made a loan to Magun Electric in the maximum principal

---

[1] The following facts are taken from the bankruptcy court's findings of facts. (Post-Trial Findings Fact & Conclusions Law [doc. no. 1].)

amount of $1.5 million ("Loan"). The Loan was documented in a Business Loan Agreement and Promissory Note ("Note") executed by Magun Electric, with the maturity date of October 16, 2009. Stip. ¶ 4; JX 1; JX 2. In conjunction with the Note, Magun Electric executed a Commercial Security Agreement giving the Bank a security interest in various collateral, including Magun Electric's accounts receivable. PX 16; Tr. 23:25-24:22; Tr. 278:23-279:6.

Simultaneously with execution of the Note by Magun Electric, on or about October 16, 2008, Gunsteen executed and delivered to the Bank a Commercial Guaranty, in which Gunsteen unconditionally and absolutely guaranteed personally the full and punctual satisfaction of Magun Electric's indebtedness to the Bank (the "Gunsteen Guaranty"). Stip. ¶ 5; JX 3. The Gunsteen Guaranty was a condition of extending credit to Magun Electric. Tr. 126:11-14.

A Co-Guarantor, Patricia Maher ("Co-Guarantor"), also provided a Commercial Guaranty to the Bank regarding Magun Electric's Note. Stip. ¶ 6. The primary source of repayment of the Loan was to be the assets of Magun Electric, including its accounts receivable, and the secondary source of repayment was to be the personal resources of the guarantors. Tr. 124:7-16.

**The 2008 Financial Statement**[2]

To support Magun Electric's application for a loan and in support of her Guaranty, Gunsteen and her husband, Daniel Gunsteen (collectively "Gunsteens"), provided the Bank with their financial statement dated July 14, 2008 ("2008 Financial Statement"). JX 4; Stip. ¶ 4. Gunsteen's net worth, as reflected in the 2008 Personal Financial Statement, was relevant to the Bank, Tr.123:25-124:6;

---

[2] The testimony and evidence offered during the bankruptcy trial focused on the Bank's claim that Gunsteen had intentionally misrepresented her financial assets in a 2009 Financial Statement, dated October 16, 2009, that she later submitted to obtain the renewal of the Loan. Because the Bank does not appeal the bankruptcy court's ruling denying its claim of nondischargeability based upon the 2009 Financial Statement, the Court need not recite those facts here.

3

Tr.185:8-18, and the assets disclosed on the 2008 Financial Statement were a material consideration in the Bank's decision whether to grant the Loan, Tr. 63:16-64:16. Gunsteen handwrote all portions of the 2008 Financial Statement. Stip. ¶ 7; JX 4.

In executing the 2008 Financial Statement, Gunsteen agreed to the following:

> The information contained in this statement is provided for the purpose of obtaining, or maintaining credit with you [the Bank] on behalf of the undersigned, or persons, firms, or corporations in whose behalf the undersigned may either severally or jointly with others, execute a guaranty in your [the Bank's] favor. Each undersigned understands that you [the Bank] are relying on the information provided herein (including the designation made as to ownership of property) in deciding to grant or continue credit. Each undersigned represents and warrants that THE INFORMATION PROVIDED IS TRUE AND COMPLETE and that you [the Bank] may consider this statement as continuing to be true and correct until a written notice of a change is given to you [the Bank] by the undersigned. You [the Bank] are authorized to make all inquiries you deem necessary to verify the accuracy of the statements made herein, and to determine my/our credit worthiness. You [the Bank] are authorized to answer questions about your [the Bank's] credit experience with me/us.

JX 4.

In the 2008 Financial Statement, Gunsteen listed as one of her assets a parcel of real estate identified as "848 Norwich Ct." Stip. ¶ 8; JX 4. The 848 Norwich Ct. property is located in Nekoosa, Adams County, Wisconsin and has been used by the Gunsteen family as a vacation property (hereinafter referred to as the "Vacation Property"). Stip. ¶ 9. Gunsteen represented to the Bank in the 2008 Financial Statement that the Vacation Property had a value of $425,000.00. Stip. ¶ 8; JX 4. Gunsteen also represented that the Vacation Property had no debt against it and was unencumbered by any mortgage. Stip. ¶ 10; JX 4. According to the 2008 Financial Statement, the Vacation Property was her single most valuable asset. JX 4.

Before submitting the 2008 Financial Statement to the Bank, the Gunsteens had agreed orally to sell and transfer title in the Vacation Property to their children for $105,000.00. Tr. 139:13-140:7; Tr. 332:16-333:4; Tr. 333:9-22; Tr. 334:4-9. On August 1, 2007, Gunsteen's children paid her and her husband the sum of $75,000.00 as a first installment toward their purchase of the Vacation Property. PX 17; Tr. 137:10-138:1; Tr. 332:16-20; Tr. 333:6-8. On September 30, 2007, Gunsteen's children paid her and her husband another $20,000.00 as a second installment for their purchase of the Vacation Property. PX 18; Tr. 138:15-139:1; Tr. 333:9-22. By mid-2008, Gunsteen and her husband had received the last payment of $10,000.00 from their children for the Vacation Property. Tr. 141:8-143:19; Tr. 333:23 -25; Tr. 334:1-3. Thus, prior to July 14, 2008, the date Gunsteen executed and delivered the 2008 Financial Statement to the Bank, Gunsteen and her husband had agreed (apparently by oral agreement, no contract or other writing having been offered in evidence) to sell the Vacation Property to their children and had already received all of the money that they were going to receive from their children for the Vacation Property. Tr. 144:25 -146:3; Tr. 332:16-334:9; Tr. 332:16-333:4; Tr. 334:4-9; Tr. 336:11-17. However, the Gunsteens had not deeded the Vacation Property to their children, nor had any mortgage or lien been placed on it when the 2008 Financial Statement was provided to the Bank.

After reviewing the 2008 Financial Statement, the Bank granted Magun Electric a line of credit for an amount not to exceed $1.5 million. JX 1; JX 2. The Bank did not request a mortgage or lien on the Vacation Property. Tr. 96:18-97:25.

The bankruptcy court found that when Gunsteen included the Vacation Property on the 2008 Financial Statement (JX 4), the representation that Gunsteen and her husband owned it was truthful, and the oral agreement for the future transfer of the Vacation Property had not diminished its market

5

value. Gunsteen and her husband still owned the Vacation Property, free of any mortgage or any rights of the children, when the 2008 transaction was executed.

On February 12, 2009, four months after the Bank made the Loan, Gunsteen and her husband legally deeded the Vacation Property to Christopher Gunsteen, their son, and Diana Gunsteen, their daughter-in-law. Stip. ¶ 14; JX 5. Neither at that time nor at any time thereafter did they receive any further payment from their children for the Vacation Property. Tr. 136:21-137:1.

## **Standard of Review**

This Court's jurisdiction is conferred by 28 U.S.C. § 158(a)(1), which governs appeals from "final judgments, orders, and decrees" of the bankruptcy court.

"We will overturn a denial of a motion for leave to amend a complaint only if the . . . court abused its discretion by refusing to grant the leave without any justifying reason." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (quotation omitted) (affirming denial of motion to amend pursuant to Rule 15(b)(2)). A party meets its burden under this standard only when it is clear that "no reasonable person would take the view adopted by the trial court." *United States v. LeShore*, 543 F.3d 935, 939 (7th Cir. 2008). Furthermore, "it is well-settled that we may affirm on any ground supported by the record, so long as it has been adequately presented below." *Stockwell v. City of Harvey*, 597 F.3d 895, 900 (7th Cir. 2010); *see In re Airadigm Commc'ns, Inc.*, 616 F.3d 642, 652 (7th Cir. 2010).

## **Discussion**

"In the ordinary course of bankruptcy, the debtor's assets are applied to the payment of his debts and, even though the assets will usually be insufficient to pay those debts in full, he will emerge from bankruptcy with the unpaid balance discharged . . . ." *McClellan v. Cantrell*, 217 F.3d

6

890, 892 (7th Cir. 2000). A creditor, however, may receive an exception from discharge under 11 U.S.C. § 523(a)(2)(B), if it proves by a preponderance of the evidence that "the debtor made a materially false written statement about his financial condition with the intent to deceive, and that the creditor reasonably relied on the statement." *In re Cohen*, 507 F.3d 610, 613 (7th Cir. 2007). "[E]xceptions to discharge are to be constructed strictly against a creditor and liberally in favor of the debtor." *Ojeda v. Goldberg*, 599 F.3d 712, 718 (7th Cir. 2010) (quotations omitted).

The trial before the bankruptcy court focused on whether Gunsteen had made a materially false written statement about her financial condition in the 2009 Financial Statement, thereby rendering her debt to the Bank nondischargeable. At the end of the trial and after considering the parties' post-trial submissions, Judge Schmetterer held that the "nondischargeability of her liability under the 2009 Statement has not been established" and thus, the Bank "will recover nothing by this action." Post-Trial Findings Fact & Conclusions Law 31. The Bank, however, does not appeal this aspect of the bankruptcy court's decision.

Instead, the Bank's appeal focuses on the 2008 Financial Statement. According to the Bank, the bankruptcy court held that the Bank had properly raised a § 523(a)(2)(B) nondischargeability claim based upon the 2008 Financial Statement during the trial.[3] This is a misreading of the bankruptcy court's holding.

In its pleadings, the Bank had failed to include a § 523(a)(2)(B) claim based on the statements made in the 2008 Financial Statement. Rather, its nondischargability claim was based on the 2009 Financial Statement. It was only after the trial that it sought to amend the pleadings

---

[3] *See* Appellant's Br. 8 n.4 ("By addressing the issue concerning the 2008 Financial Statement, the Bankruptcy Court correctly determined that Harris properly raised the 2008 Financial Statement as a basis for non-dischargeability.").

7

pursuant to Rule 15(b)(2) to raise the claim premised upon the 2008 Financial Statement.[4] The bankruptcy court, however, held that the Bank's post-trial request failed to satisfy Rule 15(b)(2) because Gunsteen did not have a fair opportunity to defend against the newly asserted claim during the trial. The Court found that, had the Bank raised the claim earlier, Gunsteen could have presented additional evidence in an effort to rebut the claim.

> [A] full trial on an asserted fraud based on the 2008 Statement would require evidence as to the actual Vacation Property value if asserted to be less than that represented. More evidence would also be needed to show all circumstances as to the promise to sell and also to show materiality of the value in light of the Bank's disinterest in obtaining a lien on the Property.

Post-Trial Findings Fact & Conclusions Law 29. In the end, contrary to the Bank's contentions that the bankruptcy court had addressed the new claim on the merits, the court held that "Gunsteen's liability to the Bank, under the 2008 Statement *has not been fully tried or proven* . . . ." *Id.* (emphasis added).

Rather than appealing the bankruptcy court's denial of its Rule 15(b)(2) request, the Bank ignores this ruling and attempts to appeal the unasserted § 532(a)(2)(B) claim on the merits. But the bankruptcy court could not have been clearer: the merits of such a claim were not addressed at trial.

---

[4] Rule 15(b)(2) provides that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b)(2). "To determine whether there was express or implied consent, . . . [a court] ascertain[s] whether the opposing party had a fair opportunity to defend and whether he could have presented additional evidence had he known sooner the substance of the amendment." *In re Prescott*, 805 F.2d 719, 725 (7th Cir. 1986) (quotations omitted). Below, the Bank argued that Gunsteen impliedly consented to the trial of the unpleaded claim by failing to object to the introduction of certain evidence regarding the 2008 Statement. The bankruptcy court found that, although some evidence was introduced as to the Bank's claim based on the 2009 Statement that incidentally supported the unpleaded issue based on the 2008 Statement, additional evidence would have been necessary to prove and defend against the unpleaded claim. Post-Trial Findings & Conclusions of Law 29-29. The Bank has not appealed this finding, ignores it, and argues that the bankruptcy court held that the unpleaded claim had been properly raised.

What is equally clear is that the Bank's Rule 15(b)(2) motion was argued fully by the parties in their post-trial submissions. Based upon these submissions, the Court concludes that the bankruptcy court did not abuse its discretion when it denied the motion to amend because the requested amendment deprived Gunsteen of a full and fair opportunity to rebut the claim at the trial. The Court thus affirms this ruling by the bankruptcy court, and having done so, the Court need go no further to affirm the decision below. *See In re Airadigm Commc'ns*, 616 F.3d at 652.

The soundness of the bankruptcy court's ruling denying the Bank's request to amend is manifest when the merits of the Bank's § 523(a)(2)(B) claim is analyzed in light of the limited evidence presented below.[5] As noted, a creditor may receive an exception from discharge under 11 U.S.C. § 523(a)(2)(B), if it proves by a preponderance of the evidence that "the debtor made a materially false written statement about his financial condition with the intent to deceive, and that the creditor reasonably relied on the statement." *In re Cohen*, 507 F.3d at 613. "[T]he elements of Section 523(a)(2)(B) are stated in the conjunctive, [and] the burden is upon the plaintiff to prove each element." *In re Orts*, Nos. 08-71457-SCS, 08–07075-SCS, 2009 WL 903259, at *11 (Bankr. E.D. Va. Feb. 24, 2009) (quotation omitted).

The Bank argues on appeal that the bankruptcy court erred when it found that Gunsteen had not misrepresented to the Bank that she owned the Vacation Property located at 848 Norwich Ct. in Nekoosa, Wisconsin when listing it in the 2008 Financial Statement. This is so, according to the

---

[5] "We review questions of law pertaining to the Bankruptcy Code de novo and the factual determinations underlying the lower courts' conclusions for clear error." *In re Sokolik*, 635 F.3d 261, 265 (7th Cir. 2011). A court reviews for clear error a bankruptcy court's determination of whether fraud existed under § 523(a). *In re Luster*, 50 F. App'x 781, 783 (7th Cir. 2002) (citing *In re Mayer*, 51 F.3d 670, 676 (7th Cir. 1995)). "The clearly erroneous standard is a high one to meet . . . ." *Piraino v. Int'l Orientation Res., Inc.*, 137 F.3d 987, 990 (7th Cir. 1998). The lower court's decision must "strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Cent. Mfg., Inc. . Brett*, 492 F.3d 876, 883 (7th Cir. 2007) (quotation omitted).

Bank, because by that time, the Gunsteens had already sold the Vacation Property to their son and daughter-in-law and had received all of the consideration from them. The bankruptcy court, however, rejected this position, concluding that, at the time that Gunsteen submitted the 2008 Financial Statement, she and her husband had not deeded the Vacation Property to the children and hence still owned it. Findings Fact ¶¶ 17-19, 21-26. Moreover, the property was free of any encumbrances. *Id.* ¶ 26. As such, the bankruptcy court found that the representation of the Gunsteens' ownership of the property at that time was true.

To support its contention that the bankruptcy court clearly erred in this determination, the Bank relies on *In re Frey*, 150 B.R. 742, 745 (Bankr. D.N.D. 1992). But that case is inapposite. In *Frey*, the court held that where the debtors, who owed several thousand dollars on a prior loan, stated that they had no debts in order to obtain loans from new lender, such a statement was false. *Id.* 150 B.R. at 745-46. Unlike the debtors in *Frey*, however, Gunsteen and her husband still held the legal title to the Vacation Property and had not transferred it to their children when the 2008 Financial Statement was submitted to the Bank. *See Carollo v. Irwin*, 959 N.E.2d 77, 84 (Ill. App. Ct. 2011) ("[I]t is clear that an actual transfer of legal title, not equitable title, is required for an actual sale."). Of course, had the Bank pleaded this claim in advance of the trial, the parties could have explored the details of the arrangement between the Gunsteens and their children, including what, if any, agreements they had with respect to the transfer of the title and whether the oral agreement had been reduced to written form. Absent such additional facts, this Court concludes that the bankruptcy court's finding that the statement in the 2008 Financial Statement was not false is not clearly erroneous.

The Bank also argues on appeal that Gunsteen misrepresented the value of the Vacation

Property in the 2008 Financial Statement by inflating its value. Other than simply relying on the sale price of the home to the Gunsteens' children, however, the Bank failed to introduce any other evidence as to the market value of the Vacation Property. Moreover, the only witness to testify as to the Vacation Property's value was Gunsteen's husband, Daniel, who stated that the property was worth $425,000.000 at the time. (Post-Trial Findings Fact & Conclusions Law 30.) The fact that the Gunsteens agreed to sell the Vacation Property for $105,000.00 to their children does not, in and of itself, establish that its actual market value was less than $425,000.00. After all, there could be any number of reasons why parents would sell their Vacation Property to their children for less-than-market value, *e.g.*, to keep the home in the family or to make it affordable for the child to buy a vacation home. The Bank's reliance on the price at which the Gunsteens sold the property to their children in an effort to demonstrate that the market value of the property was actually $105,000.00 and not $425,000.00 is misplaced.[6] *Cf. Citizens Bank & Trust Co. v. C.I.R.*, 839 F.2d 1249, 1251 (7th Cir. 1988) (stating that market price requires an arm's length transaction); *Campana Corp. v. Harrison*, 114 F.2d 400, 406 (7th Cir. 1940) ("A sale at arm's length connotes a sale between parties with adverse economic interests."). Again, had the Bank pleaded its claim in a timely fashion, the parties would have had an opportunity to introduce additional evidence regarding the market value of the Vacation Property as of the date of the 2008 Financial Statement. Left with only the estimate provided by Daniel Gunsteen, on the one hand, and the price at which the Gunsteens sold the property to their children, on the other, the Court concludes that the bankruptcy court did not clearly err when finding that the valuation of $425,000.00 stated in the 2008 Financial Statement was not

---

6 On the other hand, the negotiations between the Gunsteens and their children may have been such that the agreement to sell may have qualified as an arms-length transaction, but here again, because this claim was not pleaded prior to trial, the trial record is incomplete as to this issue.

materially false.[7]

In sum, the bankruptcy court did not abuse its discretion when it denied the Bank's request to amend the pleadings pursuant to Rule 15(b)(2)  Addressed on the merits in light of the necessarily incomplete trial record, the Bank's contention that the bankruptcy court clearly erred in finding that Gunsteen had not made a materially false written statement in the 2008 Financial Statement is likewise rejected.  Thus, the Court affirms the bankruptcy court's judgment.

## Conclusion

For the reasons provided in this Order, the bankruptcy court's entry of final judgment in Debbie Gunsteen's favor is AFFIRMED.

**SO ORDERED**                                                 ENTER:  3/20/14

_____
**JOHN Z. LEE**
**United States District Judge**

---

[7] To the extent the Bank's appeal is addressed on the merits, its failure to establish that Gunsteen had made a false statement in the 2008 Financial Statement makes it unnecessary to address the Bank's argument that it had proven reliance.  *See In re Olheiser*, No. 94-30625, 1995 WL 1943422, at *4 (Bankr. D.N.D. July 7, 1995) ("[I]f an objecting creditor fails to establish every essential fact and element contained in the statutory provision relied upon to except a particular debt from discharge by a preponderance of the evidence, the entire indebtedness is readily dischargeable notwithstanding the fact that certain facts or elements may have been established with the requisite degree of proof.").